## UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF WISCONSIN

---

JOHN BINDL, by his Legal Guardian
Deb Cavanaugh,

and

DEB CAVANAUGH
(in her own capacity)

       Plaintiffs,

          v.                Case No.: _____

VILLAGE OF SPRING GREEN,

and

ROBIN REID (in her individual capacity),

       Defendants.

---

## COMPLAINT

---

NOW COMES the plaintiffs, John Bindl, by his Legal Guardian Deb Cavanaugh, and Deb Cavanaugh (in her own capacity), by their attorneys, Gingras, Thomsen & Wachs, LLP and hereby states the following as their Complaint in the above-referenced matter.

### NATURE OF PROCEEDINGS

1.     This is a civil action under Title II of the Americans with Disabilities Act, the Fair Housing Act, as well as the First Amendment of the United States Constitution, brought to redress the Village of Spring Green's continual denial of a reasonable accommodation for John Bindl and to redress the retaliatory threats made by Village Board President Robin Reid to Deb Cavanaugh after she engaged in protected speech.

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because all claims arise under federal law.

3.      Venue is proper under 28 U.S.C. § 1391 in that all of the acts alleged to have been committed by the defendants occurred within the Western District of Wisconsin.

## PARTIES

4.      At all times relevant to this action, John Bindl (John) was an adult resident of the State of Wisconsin. He presently resides within the Western District of Wisconsin.

5.      At all times relevant to this action, Deb Cavanaugh (Deb) was an adult resident of the State of Wisconsin. She presently resides within the Western District of Wisconsin. Deb is John's mother and his legal guardian.

6.      Defendant Village of Spring Green (the Village) is a Wisconsin village organized under the laws of the State of Wisconsin and located within the Western District of Wisconsin.

7.      At all times relevant to this action, Defendant Robin Reid (Reid) was the President of the Village Board. All conduct attributable to her described in this Complaint was undertaken intentionally and committed within the scope of her employment and under color of law.

## FACTUAL ALLEGATIONS

8.      John has lived at 248 West Monroe St, Spring Green, Wisconsin (hereinafter "the Cavanaugh home") for over fifty-five years. The Cavanaugh home is on a corner lot, with West Monroe St. to the North and Cincinnati St. to the West.

9.      John is a profoundly handicapped man with breathing problems, who requires the use of a wheelchair.

2

10.    Deb and her husband Clif (collectively "the Cavanaughs") provide care for John. John lives with the Cavanaughs at 248 West Monroe St.



**Photograph 1: John with the Cavanaughs**

11.    The Cavanaughs own a modified van, which they can load John and his wheelchair in. This modified van has a built-in ramp that the Cavanaughs paid approximately $30,000 to install. A safety mechanism within the van causes the ramp to retract if it hits an obstruction while being deployed.

12.    For the approximately 55 years John has lived at 248 West Monroe St, he has always had direct access from his home's door to the street. This direct access-sidewalk greatly eases the process of loading and unloading John from vehicles because John's wheelchair often has problems turning corners, especially on a narrow sidewalk.

3



**Photograph 2: South-Facing Photo of 248 West Monroe St from August 2013**

13.     In the summer of 2023, Spring Green implemented a street-improvement project that included the 200 block of West Monroe Street.

14.     Before the street-improvement project began, Scott Whitesett—a Project Manager with Jewell Associates Engineer, Inc. (hereinafter "Jewell")—contacted the Cavanaughs.

15.     Whitesett asked the Cavanaughs if there was anything they wanted Jewell to consider during the construction. The Cavanaughs expressed concerns regarding access during the construction and indicated they would like the access-sidewalk a little wider to facilitate unloading John from their vehicle.

16.     During Whitesett's conversation with the Cavanaughs, he did not mention that Jewell was going to make the access-sidewalk in front of the Cavanaugh home steeper.

17.     In September 2023, Deb noticed construction workers from Jewell framing the sidewalk access outside Cavanaugh home. Deb observed the Jewell workers making the access-

sidewalk steeper than it was previously, while also maintaining the prior width of the sidewalk access.

18.    Deb told the Jewell workers that the steeper grade did not comply with village construction code.

19.    Deb called the Jewell's office, which sent an associate to the site with the construction plans. Deb told the Jewell associate three times that the steeper access-sidewalk could not possibly be up to code.

20.    Deb also repeatedly expressed concern to the Jewell associate that she would not be able to safely load and unload John from the Cavanaughs' vehicle because of the steeper access-sidewalk.

21.    Despite Deb's concerns, the Jewell employees poured the concrete and installed the steeper access-sidewalk.



**Photograph 3: East-Facing Photo of the Access-Sidewalk After Construction**

22.     After the construction, Deb no longer feels safe independently loading and unloading John's wheelchair from the Cavanaughs' vehicle using the access-sidewalk in front of their home. Deb does not have the strength to safely manipulate John's wheelchair on the steeper access-sidewalk. On at least one occasion, Deb was injured while loading John into the Cavanaughs' vehicle at this location because of the increased steepness.

23.     Unlike Deb, Clif is currently strong enough to independently load and unload John's wheelchair, even with the increased steepness. However, the Cavanaughs are deeply concerned about how John will manage if/when Clif is not around to help or if/when Clif does not have the strength to help.

24.     Following the construction, Deb contacted Jewell on several occasions in September and November of 2023 to express her concerns regarding the steeper access-sidewalk to Whitesett. Despite her efforts, Deb was unable to get into contact with Whitesett until mid-November 2023.

25.     After an unsatisfying call with Whitesett, Deb wrote a letter asking to appear before the Village Board. Because of this, on November 21, 2023, Deb met with the Village Administrator, a Village Public Works Department Employee, and Whitesett to discuss her concerns about the accessibility of the Cavanaugh home.

26.     At the November 2023 meeting, Deb explained how the steeper access-sidewalk has made it significantly more difficult to load and unload John into the Cavanaughs' vehicle. Deb suggested putting a strip of cement from the curb to the sidewalk at a location approximately fourteen feet east of the fire hydrant near the corner of the block that would allow for a more gradual incline to the Cavanaugh home.



**Photograph 4: Southeast-Facing Photo of 248 West Monroe St from September 2024**

27.    Whitesett proposed two alternative options to Deb and the other meeting attendants. First, Whitesett suggested placing a ramp between the corner and the fire hydrant. However, Deb noted that parking in this location would be illegal and, thus, not a viable location for the Cavanaugh's to load and unload John. Second, Whitesett suggested placing a less steep access-sidewalk on the western side of the Cavanaugh home. However, Deb explained this would be too distant from the front door of their home, which would cause Deb to have to navigate John's wheelchair a farther distance and would prolong John's exposure to potentially detrimental environmental concerns (*e.g.*, poor air quality, Spring Green's mosquito problem, etc.).

28.    Ultimately, the meeting attendants agreed that the access-sidewalk would be located 14 feet east of the fire hydrant on West Monroe Street (near the front of the Cavanaugh home), and it would be built to the grade of the former access sidewalk.

29.    Jewell told Deb that construction could not commence until the following spring.

30.    In December 2023, Deb observed Jewell staff on-site near the Cavanaugh home,

taking measurements. She assumed this was in preparation for the work to be completed the following spring. Regardless, Deb checked with officials at Jewell, who assured her that the agreement reached in November would be consistent with codes.

31.    In late April 2024, Deb realized her concerns were not being addressed when she observed a construction crew tearing out the landing and the sidewalk approaches across the street from the Cavanaugh home.

32.    Deb called the Village to express her concerns, and a public-works worker was sent to the Cavanaugh home. The public-works worker told Deb he had no knowledge about why the gutter gradient outside the Cavanaugh home was not being fixed.

33.    The President of the Village Board (Robin Reid) was called and came to the Cavanaugh home.

34.    When Deb complained that the Village had not lived up to its agreement, Reid informed her that the Village had no duty to accommodate John. Reid stated something to the effect of, "If the village accommodates you, it would have to accommodate everyone."

35.    Reid suggested the Cavanaughs load and unload John at the corner near the Cavanaugh home. In response, Deb explained that doing so would be a hazard to people using the intersection and that the corner itself was not up to code.

36.    During their conversation, Reid stated words to the effect that if the Cavanaughs did not like the steepness of the access sidewalk, Reid could arrange to have it removed completely.

37.    Deb felt threatened by Reid's comments about removing the access sidewalk entirely. Deb believes "[t]here was no reason for [Reid] to mention she had the power to remove our access" and Deb was concerned Reid would follow through since the machinery was available.

8

Deb became afraid that her family would lose the ability for even her husband to load John near the entrance of the Cavanaugh home, so Deb stopped talking with Reid.

38.    In July 2024, John's counsel sent a letter to the Village, which formally requested accommodations for John and the Cavanaughs. This letter asked the Village to "live up to its promise made in November 2023 and install an access sidewalk at a proper grade." Additionally, the letter requested the Village "reconstruct the driveway entrance so that the Cavanaugh's vehicle is not needlessly damaged every time the family goes out."

39.    Despite the Cavanaughs' continual requests for accommodation, the Village has not restored the access sidewalk to its prior (less steep) grade or provided any other accommodations to facilitate the Cavanaughs loading and unloading John from their vehicle.

## CLAIMS FOR RELIEF

**FIRST CAUSE OF ACTION AGAINST THE VILLAGE OF SPRING GREEN –
FAILURE TO ACCOMMODATE UNDER
TITLE II OF THE AMERICANS WITH DISABILITIES ACT**

40.    The plaintiffs reallege and incorporate the preceding paragraphs as if set forth fully herein.

41.    Title II of the Americans with Disabilities Act provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

42.    John is a qualified individual with a disability.

43.    By refusing to provide John his requested accommodation, the Village is in violation of Title II of the Americans with Disabilities Act.

**SECOND CAUSE OF ACTION AGAINST THE VILLAGE OF SPRING GREEN –
FAILURE TO ACCOMMODATE UNDER
THE FAIR HOUSING ACT**

44.     The plaintiffs reallege and incorporate the preceding paragraphs as if set forth fully herein.

45.     The Fair Housing Act prohibits discrimination, including "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling[.]" 42 U.S.C. § 3604(f)(3)(B).

46.     By continually refusing to provide John with a reasonable and necessary accommodation, the Village denied John the equal opportunity to use and enjoy his dwelling in violation of the Fair Housing Act.

**THIRD CAUSE OF ACTION AGAINST ROBIN REID –
42 U.S.C. § 1983 –
VIOLATION OF FIRST AMENDMENT RIGHTS**

47.     The plaintiffs reallege and incorporate the preceding paragraphs as if set forth fully herein.

48.     Section 1983 provides a cause of action against a person who, acting under the color of law, deprives another person of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983.

49.     As the Village President, Reid was acting under the color of law when she spoke with Deb about the sidewalk access outside of the Cavanaugh home.

50.     A First Amendment retaliation claim requires that the plaintiff (1) engaged in protected speech, (2) suffered a harm that that would deter future activity protected by the First

10

Amendment, and (3) the First Amendment activity was a motivating factor in the defendant's decision to retaliate.

51.     By threatening to remove the Cavanaughs' sidewalk access in response to Deb voicing her concerns about the steeper gradient, Reid deterred Deb from engaging in future protected speech and, thus, violated the First Amendment of the United States Constitution.

**WHEREFORE**, the plaintiff demands the following relief:

A.     Injunctive relief;

B.     An award of compensatory damages against the defendants that will justly compensate the plaintiffs for their losses;

C.     An award of punitive damages against Robin Reid for the willful, wanton and reckless acts she committed against the plaintiffs;

D.     An award of plaintiffs' reasonable attorneys' fees and costs incurred in this action;

E.     Pre- and post-judgment interest; and

F.     Such other relief as the Court deems just and appropriate.

Dated this 26th day of March, 2026.

GINGRAS THOMSEN & WACHS LLP
Attorneys for Plaintiffs


*s/ Paul A. Kinne*
Paul A. Kinne | State Bar Number: 1021493
kinne@gtwlawyers.com
Peter Kelly-Smith | State Bar Number: 1128245
8150 Excelsior Drive     pkellysmith@gtwlawyers.com
Madison, WI 53717
Phone: (608) 833-2632
Fax: (608) 833-2874

11